LYONS & FLOOD, LLP
1495 Morris Avenue
Union, NJ 07083
(201) 569-4453

U.S. DISTRICT COURT

2009 OCT 19  P 2: 18

Attorneys for Plaintiff
UES INTERMODAL AG

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

UES INTERMODAL AG,

        Plaintiff,

    v.

COSCO SHANGHAI SHIP MANAGEMENT
CO., LTD. (COSHIPMAN),

and

CHINA OCEAN SHIPPING (GROUP) COMPANY,

        Defendants.

Civil Action No.: 09 CV 5320 (JLL)

---

### VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF
### PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

Plaintiff UES Intermodal AG (hereinafter "UES") complains of the defendants COSCO Shanghai Ship Management Company (hereinafter "COSHIPMAN") and China Ocean Shipping (Group) Company (hereinafter "COSCO") and alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction pursuant to 33 U.S.C. § 1333.

2. At all material times, UES was and now is a company organized and existing under the laws of Germany.

3. COSHIPMAN is majority owned by COSCO. At all material times each of these defendants, was and is now a company organized and existing under the laws of China.

4. COSCO Container Lines Co., Ltd., COSCO North America, Inc., COSCO Guangzhou Ocean Shipping Co. Ltd, COSCO Shanghai International Freight Co. Ltd., COSCO Americas, Inc., China Ocean Shipping (Group) Company, China COSCO Holdings Company Ltd., COSCO Shipping Co., Ltd., COSCO Bulk Carrier Americas, Inc., Cosco Container Lines Americas, Inc., COSCO Services (U.S.A.), Inc., COSCO International, Inc., COSCO Logistics (Americas), Inc., COSCO Management, Inc., and COSCO Logistics Americas, Inc., garnishees to this action, are affiliate companies which, upon information and belief, conduct business with COSCO and/or COSHIPMAN.

## THE BASIC FACTS

5. UES is a rental and leasing operator of cargo containers in the global market.

6. UES and COSCO have had a long course of business operations, with COSCO as lessee of ocean containers from UES, for COSCO's ocean going vessels and marine operations. In 2003, COSHIPMAN approached UES, for the purpose of having UES lease containers to COSHIPMAN, which was to be a newly-formed subsidiary of COSCO. UES was reluctant to lease to COSHIPMAN, however, COSCO led UES to believe that COSCO would stand behind and assure the obligations of COSHIPMAN. That was confirmed by not only COSHIPMAN's use of the COSCO logo but also, the introduction of COSHIPMAN to UES by COSCO. From the time of the COSCO introduction to UES, COSHIPMAN always represented to UES that

COSHIPMAN was closely related to COSCO and that COSCO supported COSHIPMAN's business activities.

7. On or about September 25, 2003, UES, relying on the financial support by COSCO of COSHIPMAN, entered into Leasing Agreement No. COSH-03-384-LT with COSHIPMAN, for the lease of 2,400 HC Dry Cargo Marine Ocean Containers for a period of sixty (60) months. Pursuant to the terms of the Lease, for each container delivered, COSHIPMAN was to pay rent at an agreed to per diem rate for the Lease term, as well as all depot handling charges. Payment was due within 30 days after receipt of invoice, with interest of 1.2% per month assessed on overdue balances. (Exhibit A).

7. On or about July 27, 2004, UES, relying on the financial support by COSCO of COSHIPMAN, entered into Leasing Agreement No. COSH-04-513-LT with COSHIPMAN, for the lease of 1,500 HC Dry Cargo Marine Ocean Containers for a period of sixty (60) months. Pursuant to the terms of the Lease, for each container delivered, COSHIPMAN was to pay rent at an agreed to per diem rate for the Lease term, as well as all depot handling charges. Payment was due within 30 days after receipt of invoice, with interest of 1.2% per month assessed on overdue balances. (Exhibit B).

8. On or about February 7, 2005, UES, relying on the financial support by COSCO of COSHIPMAN, entered into Leasing Agreement No. COSH-05-598-LT with COSHIPMAN, for the lease of 500 HC Dry Cargo Marine Ocean Containers for a period of sixty (60) months. Pursuant to the terms of the Lease, for each container delivered, COSHIPMAN was to pay rent at an agreed to per diem rate for the Lease term, as well as all depot handling charges. Payment was due within 30 days after receipt of invoice, with interest of 1.2% per month assessed on

overdue balances. (Exhibit C).

9. The leases and agreements described in paragraphs 6 through 8 above are hereinafter collectively referred to as the "Leases" and the "Lease Agreements," respectively. The lease terms subsequently all were extended, providing for COSHIPMAN's continued lease of ocean containers from UES. Upon information and belief, many of these ocean containers were used on COSCO-owned or -chartered vessels, or otherwise in connection with the operation of COSCO-owned or -chartered vessels. Upon information and belief, COSHIPMAN also used the ocean containers in connection with the operations of some, if not all, of the garnishees here.

10. Further, COSHIPMAN closely collaborated with COSCO in the provision of management services for vessels which COSCO owned or chartered.

11. COSHIPMAN stopped paying its obligations to UES under the Leases in or about October 2008. COSCO also never offered to pay any amounts due under the Leases, despite its initial support for COSHIPMAN to enter into a direct business relationship with UES and COSCO's assurance to UES that COSCO would stand behind and assure COSHIPMAN's obligations.

12. Under Clause 9 of the Lease Agreements, upon default for non-payment of rentals due, UES has the right to, upon written notice, declare the entire unpaid balance of the rent due and payable immediately, and/or to terminate the Leases.

13. Under Clause 10 of the Lease Agreements, disputes arising under the Lease Agreements "shall finally be settled on the basis of the Rules of the Arbitration Institute of the Hamburg Chamber of Commerce." Clause 10 further provides that "[t]he place of jurisdiction is Hamburg."

14. Article 27 (Decision on costs) of the Rules of the Court of Arbitration of the Hamburg Chamber of Commerce provides for the award of costs, in the discretion of the Court, at the conclusion of arbitral proceedings.

15. On May 17, 2009, UES issued its Notice of Default and Leases Termination as to all Leases, declaring the entire unpaid rental balance of US$1,162,464.36 (as of April 30, 2009) to be immediately due and payable. In addition to its demand for payment, UES demanded the immediate return of its containers and leased equipment, as well as other asset recovery tools provided for in the Lease Agreements. (Exhibit D). UES made demands of both COSHIPMAN and of COSCO.

16. To date, neither COSCO nor COSHIPMAN have paid UES or returned UES' ocean containers, as UES demanded or otherwise. Presently, UES has 4,363 ocean containers leased under the Lease Agreements, none of which have been returned to UES. Upon information and belief, many of these ocean containers are still being used by or to the benefit of COSCO and COSHIPMAN.

17. As of July 31, 2009, COSCO and COSHIPMAN owed UES a total of $1,920,069.15 in unpaid and overdue lease amounts. The value of the unreturned ocean containers, as provided in the Lease Agreements, is $9,207,987. In addition, UES estimates the costs of enforcing its rights under the Lease Agreements and collecting from COSHIPMAN to be at least $50,000.00. Accordingly, UES seeks at least $11,178,056.15 through this action, as demanded below.

## COUNT I - COSHIPMAN
## BEACH OF CONTRACT

18. UES repeats paragraphs 1 through 17 as if fully set forth herein.

19. COSHIPMAN, as set out above, breached its contract with UES.

20. UES has suffered damages, and demands damages and other appropriate relief, as set forth below.

## COUNT II - COSCO
## GUARANTEE AND RATIFICATION

21. UES repeats and realleges the allegations contained in paragraphs 1-20 as if fully set forth herein.

22. The Lease Agreements state that German law controls the leases. The German Civil Code ("BGB") provides as follows:

> Section 164 - Effect of a declaration made by the agent
>
> (1) A declaration of intent which a person makes within the scope of his own power of agency in the name of a principal takes effect directly in favour of and against the principal. It is irrelevant whether the declaration is made explicitly in the name of the principal, or whether it may be gathered from the circumstances that it is to be made in his name
>
> Section 166 - Absence of intent; imputed knowledge
>
> (1) Insofar as the legal consequences of a declaration of intent are influenced by an absence of intent or by knowledge or by constructive notice of certain circumstances, it is not the person of the principal, but that of the agent, that is taken into account.
>
> (2) If, in the case of a power of agency granted by a legal transaction (authority), the agent has acted in compliance with certain instructions given by the principal, then the latter may not invoke the lack of knowledge of the agent with regard to circumstances of which the principal himself knew. The same rule applies to circumstances which the principal ought to have known, insofar as constructive notice is equivalent to knowledge.

Section 177 - Entry into contract by an unauthorised agent

(1) If a person enters into a contract in the name of another without power of agency, then the effectiveness of the contract to the benefit or detriment of the principal requires the ratification of the principal.

(2) If the other party requires the principal to make a declaration as to whether or not he ratifies the contract, the declaration may only be made to that other party; a ratification or a refusal of ratification declared to the agent before the demand is without effect. The ratification may only be declared before the expiry of two weeks after receipt of the demand; if it is not declared, it is considered to have been refused.

23. It may be gathered from the circumstances that a declaration of agency by COSHIPMAN was made for COSCO. COSCO ought to have known that COSHIPMAN was binding COSCO to obligations to UES. COSHIPMAN, throughout its lease of ocean containers from UES, used the COSCO logo, COSCO introduced COSHIPMAN to UES, and COSHIPMAN always represented to UES that COSHIPMAN was closely related to COSCO and that COSCO supported COSHIPMAN's business activities. From this and from COSCO's majority ownership of COSHIPMAN, it is abundantly clear that COSCO knew and should have known that COSHIPMAN was trading on COSCO's close relations with UES. Further, upon information and belief, because of COSCO's parent relationship with COSHIPMAN, COSCO knew or should have known that COSHIPMAN was failing to meet its obligations, including to UES.

24. As provided by German law, COSCO therefore is liable to UES for damages, as a consequence of the breach of the Lease Agreements.

25. UES has suffered damages, and demands damages and other appropriate relief, as set forth below.

## COUNT III - COSCO AND COSHIPMAN
## RULE B RELIEF

26. UES repeats and realleges the allegations contained in paragraphs 1-25 as if fully set forth herein.

27. Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims. No security for Plaintiff's claims has been posted by Defendant or anyone acting on its behalf to date.

28. Defendants cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but are believed to have, or will have during the pendency of this action, property in this jurisdiction in the hands of garnishees in this District, including: (1) notes and accounts receivable; (2) inter-company assets, including loans, receivables, credits, and transfers; and (3) other intangible personal property.

29. The garnishees to this action are New Jersey business entities and/or are registered to do business in New Jersey. Garnishees are affiliate companies of Defendants, which, upon information and belief, conduct business with Defendant. Accordingly, upon information and belief, garnishees have, or will have during the pendency of this action, assets of Defendants, in the form of receivables, inter-company assets, and other intangible personal property.

WHEREFORE, Plaintiff prays:

A. That process in due form of law issue against COSHIPMAN and COSCO, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.      That in response to Counts I and II of this Complaint, that this Court enter judgment against COSHIPMAN and COSCO, jointly and severally, in the amount of at least $11,178,056.15 through this action.

C.      That since COSHIPMAN and COSCO cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of their tangible or intangible property or any other funds held by any garnishee, which are due and owing to these defendants up to the amount of at least the amount demanded herein to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

D.      That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to Fed. R. Civ. P. 4(c) to serve process of Maritime Attachment and Garnishment in this action.

E.      That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

F.      That the Plaintiff may have such other, further and different relief as may be just and proper.

Dated: October 19, 2009

                                          Respectfully submitted,
                                          LYONS & FLOOD, LLP
                                          Attorneys for Plaintiff

                              By:      /s/ Kirk M. Lyons
                                          Kirk M. Lyons
                                          1495 Morris Avenue
                                          Union, NJ 07083
                                          (201) 569-4435

OF COUNSEL:
J. Stephen Simms
SIMMS SHOWERS LLP
20 S. Charles Street, Suite 702
Baltimore, MD 21201
(410) 783-5795

## VERIFICATION

Klaus D. Köencke certifies as follows:

1.    I am Managing Director of UES Intermodal AG, plaintiff in this action.

2.    I have read the foregoing complaint and the facts it states are true, to best of my information and belief.

> I hereby certify pursuant to 28 U.S.C. § 1746 and under penalties of perjury of the laws of the United States of America that the foregoing is true and correct, to the best of my information and belief.
>
> _____
> Klaus D. Köencke
> Managing Director, UES Intermodal AG

2009 OCT 19 P 2: 19
U.S. DISTRICT COURT