LYONS & FLOOD, LLP
1495 Morris Avenue
Union, NJ 07083
(201) 569-4453

Attorneys for Plaintiff
UES INTERMODAL AG

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

UES INTERMODAL AG,

            Plaintiff,

        v.                                    Civil Action No.: 09 CV 5320 (JLL)

COSCO SHANGHAI SHIP MANAGEMENT
CO., LTD. (COSHIPMAN),

and

CHINA OCEAN SHIPPING (GROUP) COMPANY,

            Defendants.

---

## AMENDED VERIFIED COMPLAINT WITH REQUEST FOR ISSUE OF PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

Plaintiff UES Intermodal AG (hereinafter "UES") complains of the defendants COSCO

Shanghai Ship Management Company (hereinafter "COSHIPMAN") and China Ocean Shipping

(Group) Company (hereinafter "COSCO") and alleges upon information and belief as follows:

1.      This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal

Rules of Civil Procedure.  The Court has subject matter jurisdiction pursuant to 33 U.S.C. §

1333.

2.      At all material times, UES was and now is a company organized and existing under the laws of Germany.

3.      COSHIPMAN is majority owned by COSCO.  At all material times each of these defendants, was and is now a company organized and existing under the laws of China.

4.      COSCO Container Lines Co., Ltd., COSCO North America, Inc., COSCO Guangzhou Ocean Shipping Co. Ltd, COSCO Shanghai International Freight Co. Ltd., COSCO Americas, Inc., China COSCO Holdings Company Ltd., COSCO Shipping Co., Ltd., COSCO Bulk Carrier Americas, Inc., Cosco Container Lines Americas, Inc., COSCO Services (U.S.A.), Inc., COSCO International, Inc., COSCO Logistics (Americas), Inc., COSCO Management, Inc., and COSCO Logistics Americas, Inc., garnishees to this action, are affiliate companies which, upon information and belief, conduct business with COSCO and/or COSHIPMAN.

## THE BASIC FACTS

5.      UES is a rental and leasing operator of cargo containers in the global market.

6.      UES and COSCO have had a long course of business operations, with COSCO as lessee of ocean containers from UES, for COSCO's ocean going vessels and marine operations. In 2003, COSHIPMAN approached UES, for the purpose of having UES lease containers to COSHIPMAN, which was to be a newly-formed subsidiary of COSCO.  UES was reluctant to lease to COSHIPMAN, however, COSCO led UES to believe that COSCO would stand behind and assure the obligations of COSHIPMAN.  That was confirmed by not only COSHIPMAN's use of the COSCO logo but also, the introduction of COSHIPMAN to UES by COSCO.  From the time of the COSCO introduction to UES, COSHIPMAN always represented to UES that COSHIPMAN was closely related to COSCO and that COSCO supported COSHIPMAN's

business activities.

    7.      On or about September 25, 2003, UES, relying on the financial support by
COSCO of COSHIPMAN, entered into Leasing Agreement No. COSH-03-384-LT with
COSHIPMAN, for the lease of 2,400 HC Dry Cargo Marine Ocean Containers for a period of
sixty (60) months.  Pursuant to the terms of the Lease, for each container delivered,
COSHIPMAN was to pay rent at an agreed to per diem rate for the Lease term, as well as all
depot handling charges.  Payment was due within 30 days after receipt of invoice, with interest of
1.2% per month assessed on overdue balances.  (Exhibit A).

    7.      On or about July 27, 2004, UES, relying on the financial support by COSCO of
COSHIPMAN, entered into Leasing Agreement No. COSH-04-513-LT with COSHIPMAN, for
the lease of 1,500 HC Dry Cargo Marine Ocean Containers for a period of sixty (60) months.
Pursuant to the terms of the Lease, for each container delivered, COSHIPMAN was to pay rent at
an agreed to per diem rate for the Lease term, as well as all depot handling charges.  Payment
was due within 30 days after receipt of invoice, with interest of 1.2% per month assessed on
overdue balances.  (Exhibit B).

    8.      On or about February 7, 2005, UES, relying on the financial support by COSCO
of COSHIPMAN, entered into Leasing Agreement No. COSH-05-598-LT with COSHIPMAN,
for the lease of 500 HC Dry Cargo Marine Ocean Containers for a period of sixty (60) months.
Pursuant to the terms of the Lease, for each container delivered, COSHIPMAN was to pay rent at
an agreed to per diem rate for the Lease term, as well as all depot handling charges.  Payment
was due within 30 days after receipt of invoice, with interest of 1.2% per month assessed on
overdue balances.  (Exhibit C).

9.     The leases and agreements described in paragraphs 6 through 8 above are hereinafter collectively referred to as the "Leases" and the "Lease Agreements," respectively. The lease terms subsequently all were extended, providing for COSHIPMAN's continued lease of ocean containers from UES.  Upon information and belief, many of these ocean containers were used on COSCO-owned or -chartered vessels, or otherwise in connection with the operation of COSCO-owned or -chartered vessels.  Upon information and belief, COSHIPMAN also used the ocean containers in connection with the operations of some, if not all, of the garnishees here.

10.     Further, COSHIPMAN closely collaborated with COSCO in the provision of management services for vessels which COSCO owned or chartered.

11.     COSHIPMAN stopped paying its obligations to UES under the Leases in or about October 2008.  COSCO also never offered to pay any amounts due under the Leases, despite its initial support for COSHIPMAN to enter into a direct business relationship with UES and COSCO's assurance to UES that COSCO would stand behind and assure COSHIPMAN's obligations.

12.     Under Clause 9 of the Lease Agreements, upon default for non-payment of rentals due, UES has the right to, upon written notice, declare the entire unpaid balance of the rent due and payable immediately, and/or to terminate the Leases.

13.     Under Clause 10 of the Lease Agreements, disputes arising under the Lease Agreements "shall finally be settled on the basis of the Rules of the Arbitration Institute of the Hamburg Chamber of Commerce."  Clause 10 further provides that "[t]he place of jurisdiction is Hamburg."

14.     Article 27 (Decision on costs) of the Rules of the Court of Arbitration of the

-4-

Hamburg Chamber of Commerce provides for the award of costs, in the discretion of the Court, at the conclusion of arbitral proceedings.

15.     On May 17, 2009, UES issued its Notice of Default and Leases Termination as to all Leases, declaring the entire unpaid rental balance of US$1,162,464.36 (as of April 30, 2009) to be immediately due and payable.  In addition to its demand for payment, UES demanded the immediate return of its containers and leased equipment, as well as other asset recovery tools provided for in the Lease Agreements.  (Exhibit D).  UES made demands of both COSHIPMAN and of COSCO.

16.     To date, neither COSCO nor COSHIPMAN have paid UES or returned UES' ocean containers, as UES demanded or otherwise.  Presently, UES has 4,363 ocean containers leased under the Lease Agreements, none of which have been returned to UES.  Upon information and belief, many of these ocean containers are still being used by or to the benefit of COSCO and COSHIPMAN.

17.     As of July 31, 2009, COSCO and COSHIPMAN owed UES a total of $1,920,069.15 in unpaid and overdue lease amounts.  The value of the unreturned ocean containers, as provided in the Lease Agreements, is $9,207,987.  In addition, UES estimates the costs of enforcing its rights under the Lease Agreements and collecting from COSHIPMAN to be at least $50,000.00.  Accordingly, UES seeks at least $11,178,056.15 through this action, as demanded below.

## COUNT I - COSHIPMAN
## BEACH OF CONTRACT

18.     UES repeats paragraphs 1 through 17 as if fully set forth herein.

19.     COSHIPMAN, as set out above, breached its contract with UES.

20.     UES has suffered damages, and demands damages and other appropriate relief, as set forth below.

### COUNT II - COSCO
### GUARANTEE AND RATIFICATION

21.     UES repeats and realleges the allegations contained in paragraphs 1-20 as if fully set forth herein.

22.     The Lease Agreements state that German law controls the leases.  The German Civil Code ("BGB") provides as follows:

Section 164 - Effect of a declaration made by the agent

(1) A declaration of intent which a person makes within the scope of his own power of agency in the name of a principal takes effect directly in favour of and against the principal. It is irrelevant whether the declaration is made explicitly in the name of the principal, or whether it may be gathered from the circumstances that it is to be made in his name

Section 166 - Absence of intent; imputed knowledge

(1) Insofar as the legal consequences of a declaration of intent are influenced by an absence of intent or by knowledge or by constructive notice of certain circumstances, it is not the person of the principal, but that of the agent, that is taken into account.

(2) If, in the case of a power of agency granted by a legal transaction (authority), the agent has acted in compliance with certain instructions given by the principal, then the latter may not invoke the lack of knowledge of the agent with regard to circumstances of which the principal himself knew. The same rule applies to circumstances which the principal ought to have known, insofar as constructive notice is equivalent to knowledge.

Section 177 - Entry into contract by an unauthorised agent

(1) If a person enters into a contract in the name of another without power of agency, then the effectiveness of the contract to the benefit or detriment of the

-6-

principal requires the ratification of the principal.

(2) If the other party requires the principal to make a declaration as to whether or not he ratifies the contract, the declaration may only be made to that other party; a ratification or a refusal of ratification declared to the agent before the demand is without effect. The ratification may only be declared before the expiry of two weeks after receipt of the demand; if it is not declared, it is considered to have been refused.

23.     It may be gathered from the circumstances that a declaration of agency by COSHIPMAN was made for COSCO.  COSCO ought to have known that COSHIPMAN was binding COSCO to obligations to UES.  COSHIPMAN, throughout its lease of ocean containers from UES, used the COSCO logo, COSCO introduced COSHIPMAN to UES, and COSHIPMAN always represented to UES that COSHIPMAN was closely related to COSCO and that COSCO supported COSHIPMAN's business activities.  From this and from COSCO's majority ownership of COSHIPMAN, it is abundantly clear that COSCO knew and should have known that COSHIPMAN was trading on COSCO's close relations with UES.  Further, upon information and belief, because of COSCO's parent relationship with COSHIPMAN, COSCO knew or should have known that COSHIPMAN was failing to meet its obligations, including to UES.

24.     As provided by German law, COSCO therefore is liable to UES for damages, as a consequence of the breach of the Lease Agreements.

25.     UES has suffered damages, and demands damages and other appropriate relief, as set forth below.

### COUNT III - COSCO AND COSHIPMAN
### RULE B RELIEF

26.     UES repeats and realleges the allegations contained in paragraphs 1-25 as if fully

-7-

set forth herein.

27.    Plaintiff seeks issuance of process of maritime attachment so that it may obtain

security for its claims.  No security for Plaintiff's claims has been posted by Defendant or anyone

acting on its behalf to date.

28.    Defendants cannot be found within this district within the meaning of Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure ("Rule B"), but are believed to have, or will have during the pendency of this action,

property in this jurisdiction in the hands of garnishees in this District, including: (1) notes and

accounts receivable; (2) inter-company assets, including loans, receivables, credits, and transfers;

and (3) other intangible personal property.

29.    The garnishees to this action are New Jersey business entities and/or are registered

to do business in New Jersey.  Garnishees are affiliate companies of Defendants, which, upon

information and belief, conduct business with Defendant.  Accordingly, upon information and

belief, garnishees have, or will have during the pendency of this action, assets of Defendants, in

the form of receivables, inter-company assets, and other intangible personal property.

WHEREFORE, Plaintiff prays:

A.    That process in due form of law issue against COSHIPMAN and COSCO, citing

them to appear and answer under oath all and singular the matters alleged in the Amended

Verified Complaint;

B.    That in response to Counts I and II of this Complaint, that this Court enter

judgment against COSHIPMAN and COSCO, jointly and severally, in the amount of at least

$11,178,056.15 through this action.

C.     That since COSHIPMAN and COSCO cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of their tangible or intangible property or any other funds held by any garnishee, which are due and owing to these defendants up to the amount of at least the amount demanded herein to secure the Plaintiff's claim, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Amended Verified Complaint;

D.     That since it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to Fed. R. Civ. P. 4(c) to serve process of Maritime Attachment and Garnishment in this action.

E.     That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

F.     That the Plaintiff may have such other, further and different relief as may be just and proper.

Dated: October 26, 2009

Respectfully submitted,
LYONS & FLOOD, LLP
Attorneys for Plaintiff

By:     *Kirk M. Lyons*
Kirk M. Lyons
1495 Morris Avenue
Union, NJ 07083
(212) 594-2400

-9-

OF COUNSEL:
J. Stephen Simms
SIMMS SHOWERS LLP
20 S. Charles Street, Suite 702
Baltimore, MD 21201
(410) 783-5795

## VERIFICATION

Klaus D. Köencke certifies as follows:

1.    I am Managing Director of UES Intermodal AG, plaintiff in this action.

2.    I have read the foregoing complaint and the facts it states are true, to best of my information and belief.

> I hereby certify pursuant to 28 U.S.C. § 1746 and under penalties of perjury of the laws of the United States of America  that the foregoing is true and correct, to the best of my information and belief.

Klaus D. Köencke
Managing Director, UES Intermodal AG

-10-

# EXHIBIT A

## LEASING AGREEMENT NO. COSH-03-384-LT

This Agreement, made this date 25th September, 2003 between UES AG, a company organised and existing under the laws of Germany – hereinafter called the "Lessor," and COSHIPMAN, Cosco Shanghai Ship Management Co., Ltd., a company organised and existing under the laws of Shanghai, China – hereinafter called the "Lessee."

### CLAUSE 1 – SCOPE OF AGREEMENT
In consideration of the terms and covenants herein contained the Lessor agrees to lease to the Lessee and Lessee agrees to lease from the Lessor 2.400 x 40' HC Dry Cargo Marine Ocean Containers. The units are hereinafter called "The Containers" and are identified by the serial numbers given in Appendix I to this Agreement. The Containers are described in Appendix II to this Agreement.

### CLAUSE 2 – Term
The term of this Lease shall continue for 60 months from the date each unit is delivered to Lessee under this Agreement.

After the 60 months period this Lease can be terminated and the Containers redelivered, (as to redelivery see clause 7 below) provided that either party hereto gives written cancellation at least 90 days before the stipulated termination date.

Alternatively, after the 60 months period, the term can be extended at per diems to be mutually agreed.

After the 60 months period of Lease both parties may terminate the Agreement at any time subject to written notice of termination 90 days before intended end of the Agreement. Alternatively, the Lessee has the right to purchase the equipment as per Appendix V.

Nothing in this clause shall be construed as giving the Lessee the right to return a container beyond the term of this Lease.

### CLAUSE 3 – Delivery
This Agreement refers to all units which will be delivered FOT to COSHIPMAN designated depots in Tianjin (600 units), Shanghai (400 units), Ningbo (1.200 units) and Huangpu (200 units) from middle of October 2003 to middle of January 2004.

The failure, if any, of the Lessor to deliver promptly shall not constitute a violation of this lease if caused by force majeure, strike, labour trouble at the manufacturer, or any other cause whatsoever beyond the control of Lessor.

A build-up period of one ( 1 ) month, commencing from the date on which each unit is off-lined, has been agreed between Lessor and Lessee. In case Lessee will not have picked up the units within the build-up period, Lessor will start billing Lessee with rental as from the first day of second month after each unit is offlined.

Rental charges for units picked up during the build-up period will be billed to Lessee in accordance with the actual delivery dates.

**Exhibit A**

**CLAUSE 4 – Rent**

For each Container delivered to Lessee or its agents, Lessee shall pay rent at a per diem rate as per Appendix VI for the Lease Term specified in Paragraph 2 based on a five years term.

Rent payment and depot handling charges shall be received in the name of Lessor, Lessor's bank and account to be advised later, within 30 days after receipt of invoice. Lessor will bill rental at the end of each month for the current month. Lessor is entitled to charge Lessee an interest of 1,2% per month in case of invoices overdue.

**CLAUSE 5 – Return of units**

From the date this Lease is terminated as specified in clause 2 above, the Containers shall be redelivered and – provided the Containers are in a condition specified in clause 7 below – taken off hire from the date of redelivery of each unit.

Failing redelivery within the build-down period the per diem rental shall be billed as per Appendix VI for containers still on hire. The terms and conditions of Lease Agreement will be valid, except that no further cancellation of the Lease is necessary before redelivery.

Before a Container is redelivered, Lessee shall give Lessor advance notice for redelivery at a location agreed upon in advance. The build down period is agreed to be one (1) year from date of termination of this Lease during which build down period the rent shall be as specified in Clause 4 / Appendix VI.

Containers may be redelivered into Lessor's depots in the locations according to Appendix III, with a maximum of Containers per depot, or as mutually agreed between the parties hereto, with local lift-off charges for Lessee's account.

**CLAUSE 6 – General Condition**

Lessor shall have the right to assign and/or pledge all rights to Containers and to this Leasing Agreement to its Bankers or Investors for financing or similar purposes. Such assignment will not affect the contractual positions of the Lessor and Lessee and the assignment will accordingly not relieve the Lessor (UES) from any of its obligations towards Lessee under this Lease Agreement (including, but not limited to Lessors responsibility to make the Containers available to Lessee during the Term). In connection with such assignment Lessee undertakes upon request from Lessor or its Bankers or Investors to sign an Acknowledgement-Document ("Assignment") and as may be the case a Notice of Pledge, the aforementioned documents are shown in Appendix IV. Lessor guarantees to Lessee that containers are delivered to Lessee free of any legal encumbrances whatsoever.

If the Lessee observes all the terms and conditions of this Lease it shall have quiet possession but not ownership of the Containers, except where it is otherwise specified in this Agreement. Lessor shall have no other responsibility whatsoever for, or in connection with, any and all of the Containers after redelivery of any of the Containers by the Lessor to the Lessee until the actual return thereof by the Lessee to the Lessor. Lessor shall not be responsible for loss of, or damage to, property (including cargo) of the Lessee or others, or for personal injuries to any person, arising out of, or incident to, the possession or use of the Containers during the said period of time. The Lessee shall indemnify and

hold Lessor harmless from any and all loss or damage arising out of, or resulting from, any levy or attachment on any of the Containers. The Lessee shall pay any and all taxes arising out of, or connected with the use of the Containers by it, including without limitation any Property or User taxes.

Lessor shall be responsible for manufacturing defects during the first 2 years of the lease.

**CLAUSE 7 – Off-Hire Procedure**
Billing of rental by Lessor will cease on the day a Container is redelivered at Lessor's depot provided Lessor receives repair authorisation within 5 working days after repair estimate receipt by Lessee. Repairs have to be carried out on the basis of IICL latest version, published by the Institute of International Container Lessors (IICL). It is also noted that all Containers are newly manufactured and never used when delivered to Lessee.

**CLAUSE 8 – Maintenance, Damage to, Loss or Destruction of Containers**
Except as hereinafter otherwise provided, the Lessee at its own expense shall maintain the Containers in good condition and repair and make all necessary replacements of components and parts during the term of this Lease, using parts and workmanship equal to the original condition of the Containers and as further described in the latest edition of the IICL Repair Guide.

The Lessee shall make no changes or alterations to the Containers, except with the written consent of the Lessor. The colour or identification marks or Lessee's service marks on any of the Containers must not be changed or supplemented in any way without the prior written approval of Lessor. The Lessee shall keep such marks and colours in good condition and repair throughout the term of this Lease. The Lessee may affix its identification marks to the Containers, provided that they are removed at the termination of the Lease at the Lessee's expense provided that the mark does not infringe any immaterial right or violate any law or similar Government regulations.

The Lease shall terminate as to any of the Containers which are damaged beyond repair (Constructive Total Loss) lost or destroyed (Total Loss), as of the day on which the Lessee furnishes proof or such fact to the Lessor (including, but without limitation physical inspection, if the Lessor so desires), and makes payment of the replacement value thereof. Rental stops on the date Lessee advised to Lessor the total loss of the equipment subject to Payment of the replacement value within 30 days after receipt of Lessor's invoice. If payment has not been made within these 30 days the off hire of the Container will be the date of receipt of such payment. The initial replacement value is USD 2.700,-- for each 40' HC Dry Cargo Container with a depreciation of 7% per annum, down to a minimum of 40% of the initial replacement value. Lessor will do its best to substitute similar units for any of the Containers as to which the Lease has terminated due to such loss, damage or destruction, providing the Containers are supplied at locations which are acceptable to the Lessee. Title to container for which replacement value has been paid shall immediately pass to Lessee.

The Lessee shall have the Containers adequately insured against Third Party Liability, Total Loss, Property Damage, General Average Salvage Charges and Labour, and upon request provided proof of such insurance to the Lessor.

**CLAUSE 9 – Default**

If the Lessee shall fail to make a rental payment due, or shall materially fail to comply with any other condition of this Lease, or if at any time during the term of this Lease, Lessee shall be the subject of any proceedings under the Bankruptcy Act, Insolvency Law or similar law for the relief of debtors, or become insolvent (that is unable to pay its debts as they fall due) or make an assignment for the benefit of creditors, Lessor shall have the right upon written notice to the Lessee, taking immediate effect, (a) to declare the entire unpaid balance of the rent, to be due and payable to the Lessor immediately and/or (b) to terminate the Lease as to any and all of the Containers, and after the Lease has so terminated, the Lessee shall forthwith at its own expense return the Containers to the Lessor at the place(s) specified in Clause 5, or make the Containers available for collection by Lessor, in which event the cost to Lessor shall be paid by the Lessee.

If the Lessee shall not forthwith return the Containers, Lessor shall have the right without any further written notice to repossess the Containers whether loaded or empty, to detain the Lessee's transport until the Containers are returned to Lessor, and to enter upon any premises in which the Containers may be kept. In addition, Lessee shall forthwith upon any such termination pay unpaid rent at the prescribed rate to the date of the actual return of the Containers. Notice to the effect that the entire rent is due and payable immediately, shall not preclude Lessor from giving subsequent notice of termination and enforcing its further remedies hereunder.

No remedy herein provided to Lessor is intended to be exclusive of any other remedy herein or by law provided, but shall be cumulative and in addition to any other remedy, available to the Lessor and Lessor may declare both options in the first paragraph of this Clause with full effect at the same time.

**CLAUSE 10 – Arbitration**

Any dispute arising during the execution of the Agreement shall be settled amicably through friendly consultation. In case no settlement can be reached, the dispute shall finally be settled on the basis of the Rules of the Arbitration Institute of the Hamburg Chamber of Commerce. The place of jurisdiction is Hamburg.

**CLAUSE 11 – Notice**

Every notice required or permitted to be given by either party, shall be in writing and shall be mailed, cabled or faxed to the other party, at its respective address, as it may be designated from time to time in writing.

**CLAUSE 12 – Miscellaneous**

A) This Lease is made in Germany and shall be governed by the Laws of Germany as to all matters including the validity construction and performance thereof. It constitutes the entire Lease Agreement between the Parties and cannot be changed or terminated orally.

B) The Captions of the Clauses of this Lease are for reference and the convenience of the Parties only, and do not define, limit, or enlarge the meaning or scope of any of said Clauses.

C) This Lease shall be binding upon the Parties and their respective heirs, legal representatives, successors, and Assigns, but the Lessee shall not assign or encumber

this Lease in whole or part, without prior written consent of Lessor which shall not be unreasonably withheld.

D) The Lessee hereby waives any and all existing or future set-off, or other claims, against any rents or other payments due under this Lease, and agrees to pay the rent and other amounts due under the Lease regardless of any such claims.

E) No waiver of any of the provision of this Lease shall be binding upon the waiving party unless it is in writing and signed by an Officer thereof, a waiver in one instance shall not be deemed  to be a continuing waiver for the future, but a waiver in writing signed by an Officer of the waiving party for any remaining term of the Lease shall remain in full force and effect until the termination of the Lease, unless agreed to the contrary by Lessor and Lessee in writing and amending this Lease Agreement.

F) Except where it is otherwise specified in this Agreement, no condition of warranty of any kind has been or is given by Lessor in relation to the Containers or any items thereof, and all conditions and warranties in relation hereto, whether expressed or implied, whether statutory collateral hereto or otherwise, whether in relation to the fitness of the Containers or any items thereof for any particular purpose or to compliance with any convention, statute, regulation, order or description, state, quality, or condition of Containers or any item thereof at delivery or at any other time, are hereby excluded and extinguished.

Upon request from the Lessee, Lessor agrees to exercise against the Manufacturer of the Containers any and all of the rights given by the Manufacturer to the Lessor under any warranty Clause given in the relevant Container Purchase Agreement between the Lessor and the Manufacturer.

G) All units are newly manufactured and delivered in ISO standard, IICL latest edition, and are marketable containers.

H) The Lessee shall not enter into any sub-lease with any third party of the Containers without prior written consent of Lessor.

I) Both Parties shall see to it that the International Convention for Safe Containers is complied with and that the prescribed regular inspections are carried out.

In witness whereof the parties have duly executed this instrument the day and year first herein above written.

Lessee:                                                Lessor:


----------------------------                           -----------------------------
COSHIPMAN                                              Unit Equipment Services AG

Date:                                                  Date: September 25th, 2003

Adresses:

LESSOR:
UES AG,  Teilfeld 5, 20459 Hamburg, Germany

LESSEE:
COSHIPMAN, Cosco Shanghai Ship Management Co., Ltd.
No. 378, Dong Da Ming Road
Shanghai, P.R. China 200080

**APPENDIX I to Leasing Agreement COSH-03-384-LT**

1.  The following containers are leased by Lessee from Lessor with following serial numbers:

    FINU 358600 – 360199 delivery Shanghai and Ningbo
    FINU 358000 – 358599 delivery Tianjin
    FINU 360200 – 360399 delivery Huangpu

2.  Additional types and quantities can be agreed upon between Lessee and Lessor under this contract.

Lessee:                                   Lessor:

---------------------------               -----------------------------
COSHIPMAN                                 Unit Equipment Services AG

Date:                                     Date: September 25th, 2003

**APPENDIX II to Leasing Agreement COSH-03-384-LT**

Description of Containers as per Lessor's standard All Corten specification.

**APPENDIX III to Leasing Agreement COSH-03-384-LT**

Redelivery Depots for monthly quantities                    40' HC

- Hong Kong                    50 Units
- Shanghai                     70 Units
- Ningbo                       50 Units
- Tianjin                      30 Units


Depot Handling Charges:
USD 35,-/unit

**APPENDIX IV to Leasing Agreement COSH-03-384-LT**

**NOTICE OF ASSIGNMENT - A**

Dear Sirs,

**ASSIGNMENT - LEASING AGREEMENT No. COSH-03-384-LT**

With reference to Clause 6 in Lease Agreement COSH-03-384-LT ("Leasing Agreement") we hereby inform you that we per September 25th, 2003, have pledged all our rights under this Leasing Agreement, and the equipment leased out under the Leasing Agreement, to :                                                                                  ;
Payment to be made to:
HSH Nordbank, Gerhart-Hauptmann-Platz 50
20095 Hamburg, Germany
Account No.:   1180005750
Swift:          HSHN DE HH

The registration numbers of the units are:

      FINU 358600 – 360199 delivery Shanghai and Ningbo
      FINU 358000 – 358599 delivery Tianjin
      FINU 360200 – 360399 delivery Huangpu

This pledge does not affect the Leasing Agreement between UES AG and COSHIPMAN

The units will continue to be leased out by UES AG and will accordingly not relieve UES AG from any of its obligations towards Lessee under Leasing Agreement.

UES AG



Date: September 25th, 2003

We hereby ask you kindly to confirm receipt of this information and also guarantee that you have not, prior to or concurrently with this Notice/Denunciation received any Notice of Assignment and/or pledge by Lessor concerning the Leased equipment of the aforementioned Leasing Agreement to any other party than

Please confirm by sending us a copy of this letter / facsimile message signed by your duly authorised representative.



COSHIPMAN
Date:

**APPENDIX V to Leasing Agreement COSH-03-384-LT**

After the 60 months lease period Lessee has the right to buy the equipment at the following price:

40' DV = USD 1.170,--

Provided Lessee shall have duly made all payments to UES or its assignee.

The purchase option has to be declared by Lessee latest 90 days prior to the end of the agreement.

Lessee:                                      Lessor:


-----------------------------               -----------------------------
COSHIPMAN                                    Unit Equipment Services AG


Date:                                        Date: September 25th, 2003

**APPENDIX VI to Leasing Agreement COSH-03-384-LT**

1. Lessee has to pay the following rental in accordance with clause 3 and clause 4:

   40' HC USD 1,15 per diem for delivery to Tianjin, Ningbo and Huangpu
   40' HC USD 1,125 per diem for delivery to Shanghai

2. After the end of the build-down period of one year Lessee agrees to pay the following rental in accordance with clause 5:

   40' HC USD 1,28 per diem

Lessee:                                            Lessor:

---------------------------                        ------------------------------
COSHIPMAN                                          Unit Equipment Services AG

Date:                                              Date: September 25th, 2003

# EXHIBIT B

## LEASING AGREEMENT NO. COSH-04-513-LT

This Agreement, made this date July 27th, 2004 between UES AG, a company organised and existing under the laws of Germany -- hereinafter called the "Lessor," and COSHIPMAN, Cosco Shanghai Ship Management Co., Ltd., a company organised and existing under the laws of Shanghai, China -- hereinafter called the "Lessee."

**CLAUSE 1 – SCOPE OF AGREEMENT**
In consideration of the terms and covenants herein contained the Lessor agrees to lease to the Lessee and Lessee agrees to lease from the Lessor 1.500 x 40' HC Dry Cargo Marine Ocean Containers. The units are hereinafter called "The Containers" and are identified by the serial numbers given in Appendix I to this Agreement. The Containers are described in Appendix II to this Agreement.

**CLAUSE 2 – Term**
The term of this Lease shall continue for 60 months from the date each unit is delivered to Lessee under this Agreement.

After the 60 months period this Lease can be terminated and the Containers redelivered, (as to redelivery see clause 7 below) provided that either party hereto gives written cancellation at least 90 days before the stipulated termination date.

Alternatively, after the 60 months period, the term can be extended at per diems to be mutually agreed.

After the 60 months period of Lease both parties may terminate the Agreement at any time subject to written notice of termination 90 days before intended end of the Agreement. Alternatively, the Lessee has the right to purchase the equipment as per Appendix V.

Nothing in this clause shall be construed as giving the Lessee the right to return a container beyond the term of this Lease.

**CLAUSE 3 – Delivery**
This Agreement refers to all units which will be delivered FOT to COSHIPMAN designated depots in Shanghai (250 units), Ningbo (500 units) and South China (750 units). Delivery shall be as follows:

Shanghai: From July 15th, 2004.
Ningbo: From July 15th, 2004.
South China: From August 1st, 2004 / 250 units per month.

The failure, if any, of the Lessor to deliver promptly shall not constitute a violation of this lease if caused by force majure, strike, labour trouble at the manufacturer, or any other cause whatsoever beyond the control of Lessor.

A build-up period of three ( 3 ) months, commencing from the date on which each unit is off-lined, has been agreed between Lessor and Lessee. In case Lessee will not have picked up the units within the build-up period, Lessor will start billing Lessee with rental as from the first day of fourth month after each unit is offlined.

**Exhibit B**

Rental charges for units picked up during the build-up period will be billed to Lessee in accordance with the actual delivery dates.

**CLAUSE 4 – Rent**
For each Container delivered to Lessee or its agents, Lessee shall pay rent at a per diem rate as per Appendix VI for the Lease Term specified in Paragraph 2 based on a five years term.

Rent payment and depot handling charges shall be received in the name of Lessor, Lessor's bank and account to be advised later, within 30 days after receipt of invoice. Lessor will bill rental at the end of each month for the current month. Lessor is entitled to charge Lessee an interest of 1,2% per month in case of invoices overdue.

**CLAUSE 5 – Return of units**
From the date this Lease is terminated as specified in clause 2 above, the Containers shall be redelivered and – provided the Containers are in a condition specified in clause 7 below – taken off hire from the date of redelivery of each unit.

Failing redelivery within the build-down period the per diem rental shall be billed as per Appendix VI for containers still on hire. The terms and conditions of Lease Agreement will be valid, except that no further cancellation of the Lease is necessary before redelivery.

Before a Container is redelivered, Lessee shall give Lessor advance notice for redelivery at a location agreed upon in advance. The build down period is agreed to be one (1) year from date of termination of this Lease during which build down period the rent shall be as specified in Clause 4 / Appendix VI.

Containers may be redelivered into Lessor's depots in the locations according to Appendix III, with a maximum of Containers per depot, or as mutually agreed between the parties hereto, with local lift-off charges for Lessee's account.

**CLAUSE 6 – General Condition**
Lessor shall have the right to assign and/or pledge all rights to Containers and to this Leasing Agreement to its Bankers or Investors for financing or similar purposes. Such assignment will not affect the contractual positions of the Lessor and Lessee and the assignment will accordingly not relieve the Lessor (UES) from any of its obligations towards Lessee under this Lease Agreement (including, but not limited to Lessors responsibility to make the Containers available to Lessee during the Term). In connection with such assignment Lessee undertakes upon request from Lessor or its Bankers or Investors to sign an Acknowledgement-Document ("Assignment") and as may be the case a Notice of Pledge, the aforementioned documents are shown in Appendix IV. Lessor guarantees to Lessee that containers are delivered to Lessee free of any legal encumbrances whatsoever.

If the Lessee observes all the terms and conditions of this Lease it shall have quiet possession but not ownership of the Containers, except where it is otherwise specified in this Agreement. Lessor shall have no other responsibility whatsoever for, or in connection with, any and all of the Containers after redelivery of any of the Containers by the Lessor

to the Lessee until the actual return thereof by the Lessee to the Lessor. Lessor shall not be responsible for loss of, or damage to, property (including cargo) of the Lessee or others, or for personal injuries to any person, arising out of, or incident to, the possession or use of the Containers during the said period of time. The Lessee shall indemnify and hold Lessor harmless from any and all loss or damage arising out of, or resulting from, any levy or attachment on any of the Containers. The Lessee shall pay any and all taxes arising out of, or connected with the use of the Containers by it, including without limitation any Property or User taxes.

Lessor shall be responsible for manufacturing defects during the first 2 years of the lease.

**CLAUSE 7 – Off-Hire Procedure**
Billing of rental by Lessor will cease on the day a Container is redelivered at Lessor's depot provided Lessor receives repair authorisation within 5 working days after repair estimate receipt by Lessee. Repairs have to be carried out on the basis of IICL latest version, published by the Institute of International Container Lessors (IICL). It is also noted that all Containers are newly manufactured and never used when delivered to Lessee.

**CLAUSE 8 – Maintenance, Damage to, Loss or Destruction of Containers**
Except as hereinafter otherwise provided, the Lessee at its own expense shall maintain the Containers in good condition and repair and make all necessary replacements of components and parts during the term of this Lease, using parts and workmanship equal to the original condition of the Containers and as further described in the latest edition of the IICL Repair Guide.

The Lessee shall make no changes or alterations to the Containers, except with the written consent of the Lessor. The colour or identification marks or Lessee's service marks on any of the Containers must not be changed or supplemented in any way without the prior written approval of Lessor. The Lessee shall keep such marks and colours in good condition and repair throughout the term of this Lease. The Lessee may affix its identification marks to the Containers, provided that they are removed at the termination of the Lease at the Lessee's expense provided that the mark does not infringe any immaterial right or violate any law or similar Government regulations.

The Lease shall terminate as to any of the Containers which are damaged beyond repair (Constructive Total Loss) lost or destroyed (Total Loss), as of the day on which the Lessee furnishes proof or such fact to the Lessor (including, but without limitation physical inspection, if the Lessor so desires), and makes payment of the replacement value thereof. Rental stops on the date Lessee advised to Lessor the total loss of the equipment subject to Payment of the replacement value within 30 days after receipt of Lessor's invoice. If payment has not been made within these 30 days the off hire of the Container will be the date of receipt of such payment. The initial replacement value is USD 3.950,-- for each 40' HC Dry Cargo Container with a depreciation of 7% per annum, down to a minimum of 40% of the initial replacement value. Lessor will do its best to substitute similar units for any of the Containers as to which the Lease has terminated due to such loss, damage or destruction, providing the Containers are supplied at locations which are acceptable to the Lessee. Title to container for which replacement value has been paid shall immediately pass to Lessee.

The Lessee shall have the Containers adequately insured against Third Party Liability, Total Loss, Property Damage, General Average Salvage Charges and Labour, and upon request provided proof of such insurance to the Lessor.

**CLAUSE 9 – Default**
If the Lessee shall fail to make a rental payment due, or shall materially fail to comply with any other condition of this Lease, or if at any time during the term of this Lease, Lessee shall be the subject of any proceedings under the Bankruptcy Act, Insolvency Law or similar law for the relief of debtors, or become insolvent (that is unable to pay its debts as they fall due) or make an assignment for the benefit of creditors, Lessor shall have the right upon written notice to the Lessee, taking immediate effect, (a) to declare the entire unpaid balance of the rent, to be due and payable to the Lessor immediately and/or (b) to terminate the Lease as to any and all of the Containers, and after the Lease has so terminated, the Lessee shall forthwith at its own expense return the Containers to the Lessor at the place(s) specified in Clause 5, or make the Containers available for collection by Lessor, in which event the cost to Lessor shall be paid by the Lessee.

If the Lessee shall not forthwith return the Containers, Lessor shall have the right without any further written notice to repossess the Containers whether loaded or empty, to detain the Lessee's transport until the Containers are returned to Lessor, and to enter upon any premises in which the Containers may be kept. In addition, Lessee shall forthwith upon any such termination pay unpaid rent at the prescribed rate to the date of the actual return of the Containers. Notice to the effect that the entire rent is due and payable immediately, shall not preclude Lessor from giving subsequent notice of termination and enforcing its further remedies hereunder.

No remedy herein provided to Lessor is intended to be exclusive of any other remedy herein or by law provided, but shall be cumulative and in addition to any other remedy, available to the Lessor and Lessor may declare both options in the first paragraph of this Clause with full effect at the same time.

**CLAUSE 10 – Arbitration**
Any dispute arising during the execution of the Agreement shall be settled amicably through friendly consultation. In case no settlement can be reached, the dispute shall finally be settled on the basis of the Rules of the Arbitration Institute of the Hamburg Chamber of Commerce. The place of jurisdiction is Hamburg.

**CLAUSE 11 – Notice**
Every notice required or permitted to be given by either party, shall be in writing and shall be mailed, cabled or faxed to the other party, at its respective address, as it may be designated from time to time in writing.

**CLAUSE 12 – Miscellaneous**
A) This Lease is made in Germany and shall be governed by the Laws of Germany as to all matters including the validity construction and performance thereof. It constitutes the entire Lease Agreement between the Parties and cannot be changed or terminated orally.

B)  The Captions of the Clauses of this Lease are for reference and the convenience of the Parties only, and do not define, limit, or enlarge the meaning or scope of any of said Clauses.

C)  This Lease shall be binding upon the Parties and their respective heirs, legal representatives, successors, and Assigns, but the Lessee shall not assign or encumber this Lease in whole or part, without prior written consent of Lessor which shall not be unreasonably withheld.

D)  The Lessee hereby waives any and all existing or future set-off, or other claims, against any rents or other payments due under this Lease, and agrees to pay the rent and other amounts due under the Lease regardless of any such claims.

E)  No waiver of any of the provision of this Lease shall be binding upon the waiving party unless it is in writing and signed by an Officer thereof, a waiver in one instance shall not be deemed to be a continuing waiver for the future, but a waiver in writing signed by an Officer of the waiving party for any remaining term of the Lease shall remain in full force and effect until the termination of the Lease, unless agreed to the contrary by Lessor and Lessee in writing and amending this Lease Agreement.

F)  Except where it is otherwise specified in this Agreement, no condition of warranty of any kind has been or is given by Lessor in relation to the Containers or any items thereof, and all conditions and warranties in relation hereto, whether expressed or implied, whether statutory collateral hereto or otherwise, whether in relation to the fitness of the Containers or any items thereof for any particular purpose or to compliance with any convention, statute, regulation, order or description, state, quality, or condition of Containers or any item thereof at delivery or at any other time, are hereby excluded and extinguished.

Upon request from the Lessee, Lessor agrees to exercise against the Manufacturer of the Containers any and all of the rights given by the Manufacturer to the Lessor under any warranty Clause given in the relevant Container Purchase Agreement between the Lessor and the Manufacturer.

G)  All units are newly manufactured and delivered in ISO standard, IICL latest edition, and are marketable containers.

H)  The Lessee shall not enter into any sub-lease with any third party of the Containers without prior written consent of Lessor.

I)  Both Parties shall see to it that the International Convention for Safe Containers is complied with and that the prescribed regular inspections are carried out.

In witness whereof the parties have duly executed this instrument the day and year first herein above written.

Lessee:                                        Lessor:


------------------------                       ----------------------------
COSHIPMAN                                      Unit Equipment Services AG

Date:                                          Date: July 27th, 2004

Adresses:

LESSOR:
UES AG,  Teilfeld 5, 20459 Hamburg, Germany

LESSEE:
COSHIPMAN, Cosco Shanghai Ship Management Co., Ltd.
No. 378, Dong Da Ming Road
Shanghai, P.R. China 200080

**APPENDIX I to Leasing Agreement COSH-04-513-LT**

1.  The following containers are leased by Lessee from Lessor with following serial numbers:

    As per individual movement report

2.  Additional types and quantities can be agreed upon between Lessee and Lessor under this contract.


Lessee:                                              Lessor:


---------------------------                          -----------------------------
COSHIPMAN                                            Unit Equipment Services AG


Date:                                                Date: July 27th, 2004

**APPENDIX II to Leasing Agreement COSH-04-513-LT**

Description of Containers as per Lessor's standard Full Corten specification.

**APPENDIX III to Leasing Agreement COSH-04-513-LT**

| Redelivery Depots for monthly quantities | 40' HC |
|---|---|
| • Hong Kong | 50 Units |
| • Shanghai | 70 Units |
| • Ningbo | 50 Units |
| • Tianjin | 30 Units |

Depot Handling Charges:
USD 35,-/unit

**APPENDIX V to Leasing Agreement COSH-04-513-LT**

After the 60 months lease period Lessee has the right to buy the equipment at the following price:

40' HC = USD 2.450,--

Provided Lessee shall have duly made all payments to UES or its assignee.

The purchase option has to be declared by Lessee latest 90 days prior to the end of the agreement.

Lessee:                                          Lessor:


---------------------------                      ----------------------------
COSHIPMAN                                        Unit Equipment Services AG


Date:                                            Date: July 27th, 2004

**APPENDIX VI to Leasing Agreement COSH-04-513-LT**

1.  Lessee has to pay the following rental in accordance with clause 3 and clause 4:

    40' HC USD 1,58 per diem

2.  After the end of the build-down period of one year Lessee agrees to pay the following rental in accordance with clause 5:

    40' HC USD 1,70 per diem

Lessee:                                    Lessor:


---------------------------                 -----------------------------
COSHIPMAN                                   Unit Equipment Services AG

Date:                                       Date: July 27th, 2004

**APPENDIX I to Leasing Agreement COSH-04-513-LT**

1. The following containers are leased by Lessee from Lessor with following serial numbers:

    750 x 40' HC: UESU 502501 – 503250, ex South China
    230 x 40' HC: UESU 502021 – 502250, ex Ningbo
    100 x 40' HC: UESU 464301 – 464400, ex Shanghai
    100 x 40' HC: UESU 478351 – 478450, ex Shanghai
     50 x 40' HC: UESU 478651 – 478700, ex Shanghai
    270 x 40' HC: UESU 503501 – 503770, ex Ningbo

2. Additional types and quantities can be agreed upon between Lessee and Lessor under this contract.


Lessee:                                    Lessor:


---------------------------                -----------------------------
COSHIPMAN                                  Unit Equipment Services AG


Date:                                      Date: 30th November 2006

# EXHIBIT C

## LEASING AGREEMENT NO. COSH-05-598-LT

This Agreement, made this date February 07th, 2005 between UES AG, a company organised and existing under the laws of Germany – hereinafter called the "Lessor," and COSHIPMAN, Cosco Shanghai Ship Management Co., Ltd., a company organised and existing under the laws of Shanghai, China – hereinafter called the "Lessee."

**CLAUSE 1 – SCOPE OF AGREEMENT**
In consideration of the terms and covenants herein contained the Lessor agrees to lease to the Lessee and Lessee agrees to lease from the Lessor 500 x 40' HC Dry Cargo Marine Ocean Containers. The units are hereinafter called "The Containers" and are identified by the serial numbers given in Appendix I to this Agreement. The Containers are described in Appendix II to this Agreement.

**CLAUSE 2 – Term**
The term of this Lease shall continue for 60 months from the date each unit is delivered to Lessee under this Agreement.

After the 60 months period this Lease can be terminated and the Containers redelivered, (as to redelivery see clause 7 below) provided that either party hereto gives written cancellation at least 90 days before the stipulated termination date.

Alternatively, after the 60 months period, the term can be extended at per diems to be mutually agreed.

After the 60 months period of Lease both parties may terminate the Agreement at any time subject to written notice of termination 90 days before intended end of the Agreement. Alternatively, the Lessee has the right to purchase the equipment as per Appendix V.

Nothing in this clause shall be construed as giving the Lessee the right to return a container beyond the term of this Lease.

**CLAUSE 3 – Delivery**
This Agreement refers to all units which will  be  delivered FOT to COSHIPMAN designated depots in Shanghai (150 units), Ningbo (150 units) and Yantian (200 units). Delivery within January and February 2005.

The failure, if any, of the Lessor to deliver promptly shall not constitute a violation of this lease if caused by force majure, strike, labour trouble at the manufacturer, or any other cause whatsoever beyond the control of Lessor.

A build-up period of three ( 3 ) months, commencing from the date on which each unit is off-lined, has been agreed between Lessor and Lessee. In case Lessee will not have picked up the units within the build-up period, Lessor will start billing Lessee with rental as from the first day of fourth month after each unit is offlined.

Rental charges for units picked up during the build-up period will be billed to Lessee in accordance with the actual delivery dates.

**Exhibit C**

**CLAUSE 4 – Rent**
For each Container delivered to Lessee or its agents, Lessee shall pay rent at a per diem rate as per Appendix VI for the Lease Term specified in Paragraph 2 based on a five years term.

Rent payment and depot handling charges shall be received in the name of Lessor, Lessor's bank and account to be advised later, within 30 days after receipt of invoice. Lessor will bill rental at the end of each month for the current month. Lessor is entitled to charge Lessee an interest of 1,2% per month in case of invoices overdue.

**CLAUSE 5 – Return of units**
From the date this Lease is terminated as specified in clause 2 above, the Containers shall be redelivered and – provided the Containers are in a condition specified in clause 7 below – taken off hire from the date of redelivery of each unit.

Failing redelivery within the build-down period the per diem rental shall be billed as per Appendix VI for containers still on hire. The terms and conditions of Lease Agreement will be valid, except that no further cancellation of the Lease is necessary before redelivery.

Before a Container is redelivered, Lessee shall give Lessor advance notice for redelivery at a location agreed upon in advance. The build down period is agreed to be one (1) year from date of termination of this Lease during which build down period the rent shall be as specified in Clause 4 / Appendix VI.

Containers may be redelivered into Lessor's depots in the locations according to Appendix III, with a maximum of Containers per depot, or as mutually agreed between the parties hereto, with local lift-off charges for Lessee's account.

**CLAUSE 6 – General Condition**
Lessor shall have the right to assign and/or pledge all rights to Containers and to this Leasing Agreement to its Bankers or Investors for financing or similar purposes. Such assignment will not affect the contractual positions of the Lessor and Lessee and the assignment will accordingly not relieve the Lessor (UES) from any of its obligations towards Lessee under this Lease Agreement (including, but not limited to Lessors responsibility to make the Containers available to Lessee during the Term). In connection with such assignment Lessee undertakes upon request from Lessor or its Bankers or Investors to sign an Acknowledgement-Document ("Assignment") and as may be the case a Notice of Pledge, the aforementioned documents are shown in Appendix IV. Lessor guarantees to Lessee that containers are delivered to Lessee free of any legal encumbrances whatsoever.

If the Lessee observes all the terms and conditions of this Lease it shall have quiet possession but not ownership of the Containers, except where it is otherwise specified in this Agreement. Lessor shall have no other responsibility whatsoever for, or in connection with, any and all of the Containers after redelivery of any of the Containers by the Lessor to the Lessee until the actual return thereof by the Lessee to the Lessor. Lessor shall not be responsible for loss of, or damage to, property (including cargo) of the Lessee or others, or for personal injuries to any person, arising out of, or incident to, the possession or use of the Containers during the said period of time. The Lessee shall indemnify and

NS>

hold Lessor harmless from any and all loss or damage arising out of, or resulting from, any levy or attachment on any of the Containers. The Lessee shall pay any and all taxes arising out of, or connected with the use of the Containers by it, including without limitation any Property or User taxes.

Lessor shall be responsible for manufacturing defects during the first 2 years of the lease.

**CLAUSE 7 – Off-Hire Procedure**
Billing of rental by Lessor will cease on the day a Container is redelivered at Lessor's depot provided Lessor receives repair authorisation within 5 working days after repair estimate receipt by Lessee. Repairs have to be carried out on the basis of IICL latest version, published by the Institute of International Container Lessors (IICL). It is also noted that all Containers are newly manufactured and never used when delivered to Lessee.

**CLAUSE 8 – Maintenance, Damage to, Loss or Destruction of Containers**
Except as hereinafter otherwise provided, the Lessee at its own expense shall maintain the Containers in good condition and repair and make all necessary replacements of components and parts during the term of this Lease, using parts and workmanship equal to the original condition of the Containers and as further described in the latest edition of the IICL Repair Guide.

The Lessee shall make no changes or alterations to the Containers, except with the written consent of the Lessor. The colour or identification marks or Lessee's service marks on any of the Containers must not be changed or supplemented in any way without the prior written approval of Lessor. The Lessee shall keep such marks and colours in good condition and repair throughout the term of this Lease. The Lessee may affix its identification marks to the Containers, provided that they are removed at the termination of the Lease at the Lessee's expense provided that the mark does not infringe any immaterial right or violate any law or similar Government regulations.

The Lease shall terminate as to any of the Containers which are damaged beyond repair (Constructive Total Loss) lost or destroyed (Total Loss), as of the day on which the Lessee furnishes proof or such fact to the Lessor (including, but without limitation physical inspection, if the Lessor so desires), and makes payment of the replacement value thereof. Rental stops on the date Lessee advised to Lessor the total loss of the equipment subject to Payment of the replacement value within 30 days after receipt of Lessor's invoice. If payment has not been made within these 30 days the off hire of the Container will be the date of receipt of such payment. The initial replacement value is USD 4.200,-- for each 40' HC Dry Cargo Container with a depreciation of 7% per annum, down to a minimum of 40% of the initial replacement value. Lessor will do its best to substitute similar units for any of the Containers as to which the Lease has terminated due to such loss, damage or destruction, providing the Containers are supplied at locations which are acceptable to the Lessee. Title to container for which replacement value has been paid shall immediately pass to Lessee. Should the Lessee later determine that the loss did not occur (e.g. container is found, or redelivered), Lessor will credit the previously paid initial replacement value less the per diem due from the date of original written notification, any other lease charges, and a reinstatement fee of USD 100,--.

The Lessee shall have the Containers adequately insured as follows:

a) Against all risks of physical loss and damage covering all containers while on land, afloat, in transit or at rest anywhere in the world, including General Average salvage and labour in an amount of not less than US$ 1.000.000,-- each occurrence

b) Against Third Party Liability in an amount of not less than US$ 3.000.000,-- each occurrence for bodily injury and property damage. Upon request by Lessor Lessee will name Lessor as additional assured and loss payee ( a ) and joint assured ( b ) and will furnish proof of such insurance to Lessor.

## CLAUSE 9 – Default

If the Lessee shall fail to make a rental payment due, or shall materially fail to comply with any other condition of this Lease, or if at any time during the term of this Lease, Lessee shall be the subject of any proceedings under the Bankruptcy Act, Insolvency Law or similar law for the relief of debtors, or become insolvent (that is unable to pay its debts as they fall due) or make an assignment for the benefit of creditors, Lessor shall have the right upon written notice to the Lessee, taking immediate effect, (a) to declare the entire unpaid balance of the rent, to be due and payable to the Lessor immediately and/or (b) to terminate the Lease as to any and all of the Containers, and after the Lease has so terminated, the Lessee shall forthwith at its own expense return the Containers to the Lessor at the place(s) specified in Clause 5, or make the Containers available for collection by Lessor, in which event the cost to Lessor shall be paid by the Lessee.

If the Lessee shall not forthwith return the Containers, Lessor shall have the right without any further written notice to repossess the Containers whether loaded or empty, to detain the Lessee's transport until the Containers are returned to Lessor, and to enter upon any premises in which the Containers may be kept. In addition, Lessee shall forthwith upon any such termination pay unpaid rent at the prescribed rate to the date of the actual return of the Containers. Notice to the effect that the entire rent is due and payable immediately, shall not preclude Lessor from giving subsequent notice of termination and enforcing its further remedies hereunder. Moreover, Lessor and Lessor's financing partners and assignees ( see appendix III ) such as banks, investors etc. shall be entitled, upon written notice, to have access to Lessee's container management systems and facilities including, but not limited to, its Global Tracking System enabling them to locate the containers.

No remedy herein provided to Lessor is intended to be exclusive of any other remedy herein or by law provided, but shall be cumulative and in addition to any other remedy, available to the Lessor and Lessor may declare both options in the first paragraph of this Clause with full effect at the same time.

## CLAUSE 10 – Arbitration

Any dispute arising during the execution of the Agreement shall be settled amicably through friendly consultation. In case no settlement can be reached, the dispute shall finally be settled on the basis of the Rules of the Arbitration Institute of the Hamburg Chamber of Commerce. The place of jurisdiction is Hamburg.

## CLAUSE 11 – Notice

Every notice required or permitted to be given by either party, shall be in writing and shall be mailed, cabled or faxed to the other party, at its respective address, as it may be designated from time to time in writing.

**CLAUSE 12 – Miscellaneous**

A)  This Lease is made in Germany and shall be governed by the Laws of Germany as to all matters including the validity construction and performance thereof. It constitutes the entire Lease Agreement between the Parties  and cannot be changed or terminated orally.

B)  The Captions of the Clauses of this Lease are for reference and the convenience of the Parties only, and do not define, limit, or enlarge the meaning or scope of any of said Clauses.

C)  This Lease shall be binding upon the Parties and their respective heirs, legal representatives, successors, and Assigns, but the Lessee shall not assign or encumber this Lease in whole or part, without prior written consent of Lessor which shall not be unreasonably withheld.

D)  The Lessee hereby waives any and all existing or future set-off, or other claims, against any rents or other payments due under this Lease, and agrees to pay the rent and other amounts due under the Lease regardless of any such claims.

E)  No waiver of any of the provision of this Lease shall be binding upon the waiving party unless it is in writing and signed by an Officer thereof, a waiver in one instance shall not be deemed  to be a continuing waiver for the future, but a waiver in writing signed by an Officer of the waiving party for any remaining term of the Lease shall remain in full force and effect until the termination of the Lease, unless agreed to the contrary by Lessor and Lessee in writing and amending this Lease Agreement.

F)  Except where it is otherwise specified in this Agreement, no condition of warranty of any kind has been or is given by Lessor in relation to the Containers or any items thereof, and all conditions and warranties in relation hereto, whether expressed or implied, whether statutory, collateral hereto or otherwise, whether in relation to the fitness of the Containers or any items thereof for any particular purpose or to compliance with any convention, statute, regulation, order or description, state, quality, or condition of Containers or any item thereof at delivery or at any other time, are hereby excluded and extinguished.

Upon request from the Lessee, Lessor agrèes to exercise against the Manufacturer of the Containers any and all of the rights given by the Manufacturer to the Lessor under any warranty Clause given in the relevant Container Purchase Agreement between the Lessor and the Manufacturer.

G)  All units are newly manufactured and delivered in ISO standard, IICL latest edition, and are marketable containers.

H)  The Lessee shall not enter into any sub-lease with any third party of the Containers without prior written consent of Lessor.

I)  Both Parties shall see to it that the International Convention for Safe Containers is complied with and that the prescribed regular inspections are carried out.

J) Location reports: Lessee, upon request, will provide to Lessor a detailed listing of Lessor's equipment by location. Lessee shall furnish such information within fifteen days of such request.

In witness whereof the parties have duly executed this instrument the day and year first herein above written.

Lessee:                                                          Lessor:

---------------------------                    ------------------------------
COSHIPMAN                                      Unit Equipment Services AG

Date:                                          Date: February 07th, 2005

Adresses:

LESSOR:
UES AG,  Brandstwiete 1, 20457 Hamburg, Germany

LESSEE:
COSHIPMAN, Cosco Shanghai Ship Management Co., Ltd.
No. 378, Dong Da Ming Road
Shanghai, P.R. China 200080

**APPENDIX I to Leasing Agreement COSH-05-598-LT**

1. The following containers are leased by Lessee from Lessor with following serial numbers:

   150 x 40'HC out of UESU 512671 – 512920 delivered to Shanghai
   150 x 40'HC out of UESU 508221 – 508520 delivered to Ningbo
   200 x 40'HC UESU 514596 – 514795 delivered to Yantian

2. Additional types and quantities can be agreed upon between Lessee and Lessor under this contract.

Lessee:                                    Lessor:

-------------------------                   -----------------------------
COSHIPMAN                                   Unit Equipment Services AG

Date:                                       Date: February 07th, 2005

**APPENDIX II to Leasing Agreement COSH-05-598-LT**

Description of Containers as per Lessor's standard Full Corten specification.

**APPENDIX III to Leasing Agreement COSH-05-598-LT**

Redelivery Depots for monthly quantities                    40' HC

- Hong Kong                                                 50 Units
- Shanghai                                                  70 Units
- Ningbo                                                    50 Units
- Tianjin                                                   30 Units

Depot Handling Charges:
USD 35,-/unit

**APPENDIX V to Leasing Agreement COSH-05-598-LT**

After the 60 months lease period Lessee has the right to buy the equipment at the following price:

40' HC = USD 2.575,--

Provided Lessee shall have duly made all payments to UES or its assignee.

The purchase option has to be declared by Lessee latest 90 days prior to the end of the agreement.

Lessee:                                              Lessor:


---------------------------                         -----------------------------
COSHIPMAN                                           Unit Equipment Services AG

Date:                                               Date: February 07th, 2005

**APPENDIX VI to Leasing Agreement COSH-05-598-LT**

1. Lessee has to pay the following rental in accordance with clause 3 and clause 4:

   40' HC USD 1,75 per diem for each unit delivered to Shanghai and Ningbo
   40' HC USD 1,85 per diem for each unit delivered to Yantian

2. After the end of the build-down period of one year Lessee agrees to pay the following rental in accordance with clause 5:

   40' HC USD 1,90 per diem for each unit delivered to Shanghai and Ningbo
   40' HC USD 2,00 per diem for each unit delivered to Yantian

Lessee:                                      Lessor:

---------------------------                  ----------------------------
COSHIPMAN                                    Unit Equipment Services AG

Date:                                        Date: February 07th, 2005

# EXHIBIT D

COSHIPMAN, Cosco Shanghai
Ship Management Co., Ltd.
attn. Capt. Dong Guan Fa
No. 378, Dong Da Ming road
Shanghai, 200080
P.R. China

Hamburg, 11. Mail 2009

RE: UES – Default of Leases by COSHIPMAN
Lease contract COSH-03-384-LT, COSH-04-513-LT, COSH-05-598-LT

**Letter of Default**

Dear Capt. Dong Guan Fa,

We, as UES Intermodal AG ( UES ) declare herewith that Coshipman is in default of its container lease obligations to UES, Including but not limited to Coshipman's failure to make past and now overdue lease payments to UES of US$ 1.162.464,36.

This is formal notice to you that we herewith declare the entire unpaid balance of the rent, to be due and payable to the Lessor immediately and terminate the Lease as to any and all of the Containers, and after the Lease has so terminated, the Lessee shall forthwith  at its own expense return the Containers to the Lessor.  Further, UES gives written notice pursuant to the leases, that it demands access to Coshipman' container management systems and facilities including but not limited to, Coshipman' Global Tracking System enabling location of the leased containers, and the UES demands that Coshipman provide UES immediately, with full details on insurance that the leases require, provided in favour of UES.

Please assure that Coshipman immediately makes to UES all payments demanded, including but not limited to the US $ 1.162.464,36 overdue, and the US $ 178.681,20 due this month to UES.

Please understand that If Coshipman fails to transmit funds as demanded, and/or provide insurance information and/or container management system and related Information as demanded. UES may with or without notice take all actions to protect its and related parties' Interests, including but not limited to seizure of bank accounts, arrest of vessels, and immediate recovery of Containers (loaded or unloaded).  Such actions may significantly disrupt Coshipman' operations including customer relationship.  UES issues this demand without prejudice to all of its rights under the leases and otherwise.

With best regards

UES Intermodal AG


Klaus D. Köncke                                    Ingo Meidinger
President                                               Vice President

**Exhibit D**